JEFF R. KEOHANE (CSB #190201)
E-mail: jkeohane@schwabe.com
STEPHANIE P. BERNTSEN (CSB #209225)
E-mail: sberntsen@schwabe.com
CYNTHIA S. PARK (WSBA #58012)
E-mail: cpark@schwabe.com
**SCHWABE, WILLIAMSON & WYATT, P.C.**
455 N. Whisman Rd., Ste. 200
Mountain View, CA 94043

Attorneys for Plaintiff
Auto Warehousing Company, Inc.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| AUTO WAREHOUSING COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> ELLE PLACEMENT, INC. d/b/a GOLDEN GATE STAFFING, LORI SCHAEFFER, an Individual and in her capacity as Owner, Director, Chief Executive Officer, and Chief Financial Officer of ELLE PLACEMENT, INC., and DOES 1-100, <br><br> Defendants. | Case No.: 2:22-cv-00946-TLN-CKD <br><br> **AMENDED COMPLAINT FOR:** <br><br> **(1) BREACH OF CONTRACT** <br><br> **(2) NEGLIGENCE** <br><br> **(3) BREACH OF DUTY TO DEFEND** <br><br> **(4) BREACH OF DUTY TO INDEMNIFY** <br><br> **DEMAND FOR JURY TRIAL** |

### I.   NATURE OF ACTION

1. This action involves the rights of Plaintiff Auto Warehousing Company, Inc. ("AWC"), and the obligations of Defendant Elle Placement, Inc. d/b/a Golden Gate Staffing ("Golden Gate"), pursuant to the parties' "Agreement Regarding Indemnity, Insurance, Release and Protocols", which was executed on or about June 4, 2009 (the "Indemnity Agreement").

2. Golden Gate is a staffing agency that, among other things, provides Temporary Workers to companies in various industries. Defendant Lori Schaeffer ("Schaeffer") is Golden Gate's Chief Executive Officer and Chief Financial Officer (collectively "Defendants"), and upon information and belief is the sole owner and sole director of Golden Gate.

3.     Pursuant to the Indemnity Agreement, Golden Gate agreed to provide AWC with short term "Temporary Workers." The Indemnity Agreement also : (i) provided that the Temporary Workers were *not* employees of AWC but employees of Golden Gate; (ii) clearly and unambiguously required Golden Gate to ***indemnify, defend, and hold harmless*** AWC for any injuries suffered by any Temporary Workers; and (iii) mandated that Golden Gate provide and maintain proper insurance coverage for Golden Gate provided Temporary Workers.

4.     The Indemnity Agreement specifically provided that Golden Gate did not and would not "contend that the Washington State Industrial Insurance Act . . . or the workman's compensation or industrial insurance laws of any other state, negates or limits [Golden Gate's] obligations to indemnify, defend and hold harmless AWC."

5.     On or about April 9, 2015, Michael Green ("Green"), a Temporary Worker provided by Golden Gate to AWC, filed a Petition with the California Workers' Compensation Appeals Board ("WCAB"), for injuries purportedly sustained while performing duties for AWC in or about November 2012 (the "WCAB Proceeding"). In or before February 2018, AWC (and its insurer, Liberty Mutual Insurance Co. ("Liberty Mutual")) were joined into the same as named respondents. As of filing of this action, the WCAB Proceeding remained ongoing.

6.     In or about March 2020, Green also filed a Petition with the U.S. Department of Labor's Office of Workers' Compensation Programs ("OALJ") seeking workers' compensation benefits under the Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 901 et seq. (the "Longshoreman Act") for the same injuries allegedly sustained in or about November 2012 (the "OALJ Proceeding"). Golden Gate, AWC, and Liberty Mutual were named respondents in the OALJ Proceeding.

7.     AWC requested that Golden Gate, which is also named as a respondent in the OALJ Proceeding, indemnify and defend AWC in connection with the OALJ and WCAB Proceedings. Golden Gate, through its Chief Executive Officer, Schaeffer, repeatedly refused to do so, forcing AWC to incur hundreds of thousands of dollars in fees and costs, including attorneys' fees, in defending against the WCAB Proceeding and OALJ Proceeding. In seeking indemnity for the WCAB and OALJ Proceedings, AWC discovered that Golden Gate negligently failed to maintain proper insurance

coverage(s) pursuant to the Indemnity Agreement.

8. Golden Gate affirmatively repudiated the Indemnity Agreement in October 2021 by filing a *sworn declaration* in the OALJ Proceeding. The sworn declaration falsely attested that Green was not Golden Gate's employee at the time of his alleged injury and directly contravened not only the Indemnity Agreement between Golden Gate and AWC but also the alleged facts in both the WCAB and OALJ Proceedings. In further violation of the Indemnity Agreement, Golden Gate and Schaeffer have been cooperating with Green and his counsel, rather than protecting the interests of its client, AWC.

9. AWC seeks to hold Golden Gate accountable for its material breaches of the Indemnity Agreement, including its refusal to honor the obligation to defend and indemnify AWC in connection with the WCAB Proceeding and OALJ Proceeding, as well as its intentional or negligent failure to maintain and provide proper insurance coverage for Green and any other Temporary Workers as required by the Indemnity Agreement.

10. AWC further seeks to recoup from Golden Gate all costs and fees (including attorneys' fees) that AWC has unnecessarily incurred, and continues to incur, as a result Golden Gate's material breaches of the Indemnity Agreement.  AWC seeks an order from this Court declaring that Golden Gate is required to indemnify and defend AWC in connection with the WCAB Proceeding and OALJ Proceeding in accordance with the clear and unambiguous terms of the Indemnity Agreement. Finally, AWC seeks an order from this Court declaring that Schaeffer may be held personally liable for any and all liabilities, including in connection with the WCAB and OALJ Proceedings, under corporate veil-piercing principles because upon information and belief, Golden Gate is nothing more than a sham corporation and alter ego of Schaeffer.

## II.    PARTIES

11. AWC is a corporation incorporated under the laws of the State of Washington with its principal place of business in Tacoma, Washington. AWC provides warehouse space and vehicle services, including accessory installation and inspections, to vehicle manufacturers prior to delivery to car dealerships throughout the United States.

3
AMENDED COMPLAINT

PDX\000528\271264\CSP\36053427.1

12. Golden Gate is a corporation incorporated under the laws of the State of California. At all times relevant to this action, AWC is informed and believes, and on that basis alleges, that Golden Gate was in the business of providing direct placement and temporary workers to a variety of industries, including, without limitation, auto processing, construction, accounting, technology, and call centers.

13. Upon information and belief, Schaeffer is domiciled in the State of California. At all relevant times to this action, Schaeffer has been the Chief Executive Officer and Chief Financial Officer of Golden Gate. Upon information and belief, Schaeffer is the sole owner and sole Director of Golden Gate at all times relevant to this action.

14. Upon information and belief, Schaeffer is, and has been at all times relevant to this action, the alter ego of Golden Gate and accordingly should be held personally liable under corporate veil-piercing principles. Under Washington law, it is proper to pierce the corporate veil where, as here: (1) the corporate form is used to "violate or evade a duty"; and (2) "disregarding the corporate veil is necessary and required to prevent an unjustified loss to the injured party." *Mora v. MacGilvary*, 495 P.3d 850, 861 (2021).

15. Upon information and belief, there exists a unity of interest and ownership between Schaeffer and Golden Gate, such that their individuality and separateness does not exist. In particular, Schaeffer has used Golden Gate as a sham corporation, through which to evade its express contractual obligations to AWC under the Indemnity Agreement.

16. Upon information and belief, Schaeffer – by and through Golden Gate – induced AWC to enter into the Indemnity Agreement by representing that Golden Gate would honor its contractual obligations to maintain requisite insurance coverage, including longshoreman workers' compensation insurance, and honor its contractual obligations to indemnify AWC for injuries sustained by Golden Gate's employees.

17. Upon information and belief, Golden Gate is undercapitalized and inadequately insured, as evidenced by: (1) Schaeffer's sworn declaration in support of Green's opposition to AWC's Motion to Dismiss in the OALJ Proceeding and (2) Golden Gate's failure to obtain and maintain the

requisite insurance coverage(s) for Golden Gate, including longshoreman workers' compensation insurance. As set forth more fully below, such facts also evidence Defendant Schaeffer's exclusive control over Golden Gate.

18. The corporate veil should be pierced as between Golden Gate and Schaeffer because recognition of the corporate veil would result in manifest injustice insofar AWC has incurred well over $500,000 in attorneys' fees and costs (including medical payments to Green) defending against the WCAB and OALJ Proceedings.

19. The corporate veil should be pierced as between Golden Gate and Schaeffer because further manifest injustice will result if a judgment is entered against AWC in the respective WCAB and OALJ Proceedings, but Golden Gate's undercapitalization or underinsurance does not or cannot allow indemnification of AWC, despite an express requirement under the Indemnity Agreement.

### III. JURISDICTION AND VENUE

20. AWC incorporates by reference herein paragraphs 1 through 19 as though fully set forth herein.

21. Pursuant to 28 U.S.C. § 1404(b) AWC and Defendants stipulated to transfer this matter to the United States District Court for the Eastern District of California at Sacramento.

### IV. CHOICE OF LAW

22. AWC incorporates by reference herein paragraphs 1 through 21 as though fully set forth herein.

23. Section 13 of the Indemnity Agreement, expressly provides, "[t]his agreement shall be governed by the laws of the State of Washington."

### V. GENERAL ALLEGATIONS

**Golden Gate Contractually Agrees to Indemnify AWC**

24. AWC incorporates by reference herein paragraphs 1 through 23 as though fully set forth herein.

25. On June 24, 2009, AWC and Golden Gate executed the Indemnity Agreement. Acting as Golden Gate's Chief Executive Officer, Schaeffer signed the Indemnity Agreement, including

5
AMENDED COMPLAINT

PDX\000528\271264\CSP\36053427.1

initialing each and every page of the agreement. A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit A** and is incorporated by reference as though fully set forth herein.

26. Paragraph 1 of the Indemnity Agreement expressly provides Golden Gate's obligations to "indemnify, defend and hold harmless AWC, all directors, officers, employees and agents of AWC, and AWC's customers . . . from and against all demands, claims, actions, losses, judgments, costs and expenses (including reasonable attorneys fees) imposed upon or incurred by AWC to the extent arising out of any of the following: . . . (b) Injury or death to any Temporary Worker arising directly or indirectly from work performed by any Temporary Worker or the presence on AWC Premises . . . of any Temporary Worker, regardless of cause, and in particular, without limitation, regardless of whether the injury or death is caused by the sole negligence of AWC . . . ." Exhibit A at ¶ 1.

27. The Indemnity Agreement further states in Paragraph 2 that Golden Gate's obligation to indemnify, defend and hold harmless AWC, its directors, officers, employees, agents, and customers is not altered by Washington or any other state's workman's compensation or industrial insurance laws or regulations. Exhibit A at ¶ 2.

28. Paragraph 4 of the Indemnity Agreement specifically required Golden Gate obtain and maintain insurance for workman's compensation, comprehensive general liability in the amount of $2,000,000 per occurrence, employer's liability in the amount of $1,000,000 per accident, commercial blanket bond insurance in the aggregate amount of $5,000,000 per occurrence with AWC and AWC's customers, and first party automobile insurance.

29. At all relevant times herein, the Indemnity Agreement remained in full force and effect.

30. In or around November 2012, Golden Gate assigned Green as a Temporary Worker to AWC's warehousing facility, located in Richmond, California.

31. On or about November 20, 2012, Green claimed he that was injured while servicing a vehicle for AWC.

32. On or about April 9, 2015, Green commenced the WCAB Proceeding. Green initially filed solely against Golden Gate, which at the time was insured by Lumberman's Underwriting Alliance.

33. In or about May 2016, Green claimed that Lumberman's Underwriting Alliance was ordered into liquidation, and Green consequently claimed that the California Insurance Guarantee Association ("CIGA") was required to assume the administration of benefits in the WCAB proceeding.

34. On or about May 12, 2017, CIGA filed an Amended Petition for Joinder in the WCAB Proceeding, seeking to join AWC and its insurer, Liberty Mutual, as "special employer."

35. On or about July 5, 2017, Green filed a Petition for Change of Claim Administrator, seeking a determination that liability for administration of his claim should attach to AWC and its insurer, Liberty Mutual because Lumberman's Underwriting Association had become insolvent and had been ordered into liquidation.

36. On February 9, 2018, the WCAB entered an order granting a stipulation between Green, AWC, and CIGA. The stipulation specified that CIGA accepted coverage for Green's claims of lumbar spine, hip, shoulder, and knee injury. The stipulation further specified that all other claims of injury remained in dispute.

37. On June 24, 2009, WCAB entered an order granting a second stipulation that reflected an agreement between, Green, AWC, AWC's insurer, and CIGA where AWC's insurer would reimburse CIGA in full and final satisfaction of costs and charges that CIGA paid towards Green's claims. The order thereby released CIGA from all further proceedings.

38. To date, Golden Gate has failed and wrongfully refused to indemnify, defend and hold harmless AWC in connection with the WCAB Proceeding as required by the Indemnity Agreement.

39. At the time of filing this action, the WCAB Proceeding remained ongoing and as a result of Golden Gate's material breach of the Indemnity Agreement, AWC has been required to incur well over $500,000 in costs (including medical payments to Green) and fees in defending against the WCAB Proceeding.

40. In addition to the WCAB Proceeding, Green also commenced an OALJ Proceeding in or about March 2020 against Golden Gate (erroneously named as "Elite Placement, Inc."), AWC, and Liberty Mutual.

41. In or about April 2020, Green amended his OALJ petition to expand the nature of his injuries. *See* **Exhibit B**.

42. In the OALJ Proceeding, Green alleges injuries to his back, hip, neck, and right shoulder purportedly resulting from the same November 2012 incident. Green further alleges injury to his left knee and neck from a purported incident in 2016. Green does not allege any intentional, willful, or wanton misconduct on the part of AWC.

43. During the course of the OALJ Proceeding, an informal finding was made that Golden Gate employed Green and assigned him to AWC as a temporary driver. Thus, Green could not be considered an AWC employee for purposes of the Longshoreman Act.

44. As November 21, 2021, the OALJ Proceeding remained ongoing and was set for trial on January 3, 2022. Golden Gate and Schaefer are and have been well aware of the OALJ Proceeding, which Golden Gate is named as a Respondent but notably has refused to appear in same.

45. The OALJ Proceeding was dismissed on December 30, 2022, and the WCAB Proceeding closed on January 3, 2023.

**CHOICE OF LAW**

46. The Indemnity Agreement has an express choice of law provision stating, "This Agreement shall be governed by the laws of the State of Washington." Accordingly, Washington law applies to this matter.

**COUNT I – BREACH OF CONTRACT**

47. AWC incorporates by references herein paragraphs 1 through 42 as though fully set forth herein.

48. The Indemnity Agreement is an enforceable contract.

49. As alleged above, Defendant Golden Gate, through its Chief Executive Officer, Defendant Schaeffer, entered into the Indemnity Agreement with AWC, which obligated Defendant Golden Gate obtain insurance for workman's compensation, comprehensive general liability, employer's liability, first-party automobile.

50. Defendant Golden Gate agreed to retain comprehensive general liability with a combined single limit of no less than $2,000,000 per occurrence, employer's liability with a limit of no less than $1,000,000 per accident, and a bond with limits of $5,000,000 in the aggregate per occurrence with AWC and AWC's customers as additional insureds.

51. Upon information and belief, Defendant Golden Gate failed to seek and obtain such insurance coverage in breach of its obligations under the Indemnity Agreement.

52. Rather, Defendant Golden Gate was woefully underinsured in breach of its contractual responsibilities pursuant to the Indemnity Agreement.

## COUNT II – NEGLIGENCE

53. AWC incorporates by reference herein paragraphs 1 through 48 as though fully set forth herein.

54. Under Washington common law, Defendant Golden Gate owed AWC a duty to properly scrutinize and train each temporary worker furnished to AWC.

55. Upon information and belief, Defendant Golden Gate breached its duty by failing to conduct effective background checks and training for the temporary workers, including Green, before assigning such temporary workers to AWC locations.

56. Defendant Golden Gate's breach of duty proximately caused Green's purported injuries in his claims against AWC and Defendants, which AWC defends against in the OALJ and WCAB Proceedings.

57. Defendants Golden Gate and Schaeffer further negligently failed to procure adequate insurance in the amounts of coverage required by the Indemnity Agreement. That negligence of Defendants was an independent proximate case of AWC's damages.

58. Washington law recognizes the independent duty doctrine, whereby AWC is entitled to seek damages for Defendants' negligence.

## COUNT III – BREACH OF DUTY TO DEFEND

59. AWC incorporates by reference herein paragraphs 1 through 53 as though fully set forth herein.

60. The Indemnity Agreement is unambiguous. Defendants undertook a duty to defend when entering into the Indemnity Agreement. The Indemnity Agreement clearly states that Defendant Golden Gate would indemnify, defend, and hold harmless AWC and AWC's customers "from and against all demands, claims, actions, losses, judgments, costs and expenses (including reasonable attorneys fees) imposed upon or incurred by AWC to the extent arising out of any of the following . . . injury or death to any Temporary Worker arising directly or indirectly from work performed by any Temporary worker . . . ." The Indemnity Agreement goes onto provide additional situations and duties, for which Defendant Golden Gate indemnify, defend, and hold harmless AWC.

61. Under Washington law, the duty to defend is broader than the duty to indemnify and arises where an insurance policy conceivably covers the insured.

62. Defendant Golden Gate expressly covenanted with AWC in the Indemnity Agreement to obtain insurance coverages pursuant to its relationship with AWC and to name AWC and AWC's customers as additional insureds.

63. Upon information and belief, Defendant Golden Gate failed to secure such insurance coverage, either through breach of contract and/or through negligence, including failing to list AWC and AWC's customers as additional insureds.

64. Further, since Green's commencement of the OALJ and WCAB Proceedings, Defendant Golden Gate has failed to uphold the duty to defend pursuant to the Indemnity Agreement between the parties.

**COUNT V – BREACH OF DUTY TO INDEMNIFY**

65. AWC incorporates by reference herein paragraphs 1 through 59 as though fully set forth herein.

66. Under the Indemnity Agreement, Defendant Golden Gate unambiguously owes AWC a duty to defend and also a duty to indemnify and hold harmless AWC from and against all demands, claims, actions, losses, judgments, costs, and expenses, including reasonable attorneys fees imposed upon or incurred by AWC for injury to or death of Defendant Golden Gate employed Temporary Workers.

10
AMENDED COMPLAINT
PDX\000528\271264\CSP\36053427.1

67. Defendant Golden Gate breached its duty to indemnify AWC by failing to obtain requisite insurance, including but not limited to workers compensation insurance and Longshoreman Act coverage, constituting negligent tender of defense.

68. Defendant Golden Gate further breached its duty to indemnify by refusing to accept AWC's tender of defense in Green's respective commencements of the OALJ and WCAB Proceedings.

69. Green's OALJ and WCAB Proceedings are the types of demands, claims, and actions, which the Indemnity Agreement contemplates. As such, Defendant Golden Gate's failure to defend and indemnify is a breach of its duties pursuant to the Indemnity Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff AWC prays for judgment as follows:

1. Actual damages, including $806,879.46 that AWC expended in defense of Green's claims before WCAB and OALJ and all accruing fees and expenses to enforce Defendants contractual obligations to AWC, and consequential damages in an amount to be determined at trial;

2. An order piercing the corporate veil between Defendant Schaeffer and Golden Gate such that any judgment awarded in AWC's favor with respect to Green's purported injury on or about November 20, 2012, as well as any fees and costs incurred in defending against the same, including, without limitation, in connection with the WCAB Proceeding and OALJ Proceeding, can be enforced against Defendant Schaeffer personally;

3. Accrued interest at the maximum allowable rate under the law and in an amount to be proven at trial;

4. A declaration of AWC's rights and Golden Gate's rights under the Indemnity Agreement as they relate to Green's purported injury on or about November 20, 2012, including, without limitation:

    a. An order decreeing that Green was an employee of Golden Gate at the time of his alleged injury on or about November 20, 2012;

      b.      An order decreeing that Green was not an employee of Plaintiff AWC at the time of his alleged injury on or about November 20, 2012;

      c.      An order decreeing that Golden Gate failed to maintain the requisite insurance, including but not limited to the requisite workers' compensation insurance and Longshoreman Act coverage, as required by the Indemnity Agreement;

      d.      An order compelling Golden Gate's specific performance under the Indemnity Agreement with respect to defending, indemnifying, and holding harmless AWC against any and all demands, claims, actions, losses, judgments, costs (including all medical payments made to, or to be made to, Green) and expenses (including reasonable attorneys' fees) imposed upon or incurred by AWC in connection with or as a result of Green's alleged injury on or about November 20, 2012, including, without limitation, attorneys' fees and costs (including medical payments made to Green) that have been incurred (and continue to accrue) in connection with the WCAB Proceeding and OALJ Proceeding;

5.    Reasonable attorneys' fees and costs of suit incurred by AWC in bringing this action to enforce the Indemnity Agreement; and

6.    Such other relief as the Court deems just and proper.

Dated: March 9, 2023.

                                            SCHWABE, WILLIAMSON & WYATT, P.C.

                                            By:   /s/ Stephanie P. Berntsen
                                                   Jeff R. Keohane (CSB #190201)
                                                   E-mail: jkeohane@schwabe.com
                                                   Stephanie P. Berntsen (CSB #209225)
                                                   E-mail: sberntsen@schwabe.com
                                                   Cynthia S. Park (WSBA #58012)
                                                   E-mail: cpark@schwabe.com
                                                   (*Admitted Pro Hac Vice*)
                                                   Attorneys for Plaintiff
                                                   Auto Warehousing Company, Inc.

PDX\000528\271264\CSP\36053427.1